**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**STEPHANIE DUTCHER,**

                            **Plaintiff,**                    **1:12-cv-1662**
                                                              **(GLS)**

                **v.**

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                            **Defendant.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Stephen J. Mastaitis, Jr.          STEPHEN J. MASTAITIS, JR.,
1412 Route 9P                                ESQ.
Saratoga Springs, NY 12866

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN                    JEREMY A. LINDEN
United States Attorney                       Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Stephanie Dutcher challenges the Commissioner of Social Security's denial of her claim for a period of disability and Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Dutcher's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On April 23, 2010, Dutcher filed an application for DIB under the Social Security Act ("the Act"), alleging disability since February 13, 2007. (Tr.[1] at 62, 114-20.)[2] After her application was denied, (*id.* at 71-76), Dutcher requested a hearing before an Administrative Law Judge (ALJ), which was held on June 30, 2011, (*id.* at 26-60, 80-81). On September 8, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the

_____

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 10.)

[2] Dutcher also filed an application for Supplemental Security Income (SSI) on April 23, 2010, but in her complaint, she appeals only the ALJ's decision denying DIB. (Compl.; Tr. at 110-13.)

Social Security Administration Appeals Council's denial of review. (*Id.* at 2-5, 8-25.)

Dutcher commenced the present action by filing her complaint on November 8, 2012 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 9, 10.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 14, 17.)

### III. <u>Contentions</u>

Dutcher contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 14 at 7-10; Dkt. No. 14, Attach. 1 at 1-17.)[3] Specifically, Dutcher claims that the ALJ: (1) erred in failing to find that her severe impairments meet listings 1.02 and/or 1.04; (2) rendered a residual functional capacity (RFC) determination that is unsupported by substantial evidence; and (3) erred in failing to obtain the testimony of a vocational expert (VE).[4] (Dkt. No. 14 at

---

[3] The court notes that Dutcher's counsel has neglected to paginate the brief in compliance with Local Rule 10.1(a). *See* General Order No. 18.

[4] The court notes that Dutcher's arguments are disjointed. (Dkt. No. 14 at 7-10; Dkt. No. 14, Attach. 1 at 1-17.) For example, her first argument claims that substantial evidence does not support the ALJ's RFC assessment, but the discussion that follows includes the argument that her impairments meet listings 1.04 and 1.02. (Dkt. No. 14 at 1, 7-10; Dkt. No. 14, Attach. 1 at 1-6.) As such, the court will construe Dutcher's arguments liberally, and,

7-10; Dkt. No. 14, Attach. 1 at 1-17.)  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence.  (Dkt. No. 17 at 5-17.)

## IV.  Facts

The court adopts the parties' undisputed factual recitations.  (Dkt. No. 14 at 2-6; Dkt. No. 17 at 2.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.    Listings 1.02 and 1.04

According to Dutcher, her "cervical (and left ankle) pre-surgical and

where possible, discuss the claims she raises.  Further, Dutcher's first and third points are repetitive and will not be addressed separately.  (Dkt. No. 14, Attach. 1 at 3-6, 9-19.)

post-surgical history and workups are equivalent to" listings 1.02(A) or (B) and/or 1.04(A) or (C).  (Dkt. No. 14, Attach. 1 at 2-3.)  In making this argument, Dutcher claims that she is unable to stand, climb, squat, ambulate, or perform fine or gross hand/arm movements effectively on a sustained basis.  (*Id.* at 2.)  The Commissioner counters, and the court agrees, that the evidence of record supports the ALJ's conclusion that Dutcher does not meet any listing.  (Dkt. No. 17 at 5-7.)

    If a claimant's "impairment(s) meet[] or equal[] a listed impairment" and "meets the durational requirement," she will be found disabled.  20 C.F.R. § 404.1520(d).  Listing 1.02 deals with major dsyfunction of a joint, such as the knee or wrist.  *See* 20. C.F.R. pt. 404, subpt. P, app. 1, § 1.02. The listing requires either an inability to ambulate effectively, or an inability to perform fine and gross movements effectively.  *See id.* § 1.02(A)-(B). To satisfy listing 1.04, Dutcher must show that she suffers from a spinal disorder resulting in either motor loss accompanied by sensory or reflex loss, or an inability to ambulate effectively.  *See id.* § 1.04(A), (C).[5] Notably, under the listings, "[i]neffective ambulation is defined generally as

---

[5] Dutcher does not claim that her impairments meet the severity of listing 1.04(B).  (Dkt. No. 14, Attach. 1 at 2.)

having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* § 1.00(B)(2)(b)(1). Examples of ineffective ambulation include "the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, [and] the inability to carry out routine ambulatory activities, such as shopping and banking." *Id.* § 1.00(B)(2)(b)(2). Additionally, "[i]nability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities." *Id.* § 1.00(B)(2)(c). The regulations provide the following examples of inability to perform fine and gross movements effectively: "the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." *Id.*

Here, as the ALJ noted in his decision, there is no evidence of record that Dutcher is unable to ambulate effectively or perform gross and fine manipulation as required under the listings. (Tr. at 14.) Indeed, Dutcher does not cite to any record evidence of such inabilities. (Dkt. No. 14, Attach. 1 at 2-3.) Instead, the medical evidence of record consistently

indicates that Dutcher's gait was normal and she could heel and toe walk. (Tr. at 221, 229, 312, 344, 409, 419, 426.)  Further, Dutcher did not report using any assistive devices for walking and reported shopping as often as once a week, preparing microwave meals daily, caring for a small dog, and doing laundry weekly.  (*Id.* at 48, 190-92, 194.)  In addition, in May 2008, Dutcher's treating physician noted that she had been very active, including writing for school and cutting hair with her arms extended.  (*Id.* at 319.)  In November 2008, Dutcher reported to consultative examiner Albert Paolano that she was able to do most house work that does not require heavy lifting.  (*Id.* at 343.)

With respect to listing 1.04(A), even if Dutcher demonstrated that her cervical spine degenerative disc disease is accompanied by nerve root compression and sensory loss in her upper extremities, (Dkt. No. 14, Attach. 1 at 2), she failed to prove the existence of other specified medical criteria required under the listing.  *See* 20. C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A).  In fact, in order to qualify for listing severity, the claimant must show that she meets all the requirements of the listing consistently.  *See* *Evans v. Astrue*, No. 12-CV-6002, 2012 WL 6204219, at *3-4 (W.D.N.Y. Dec.12, 2012).  On numerous occasions Dutcher's treatment notes reflect

that she had good range of motion of her neck and/or full motor strength in her upper extremities.  (Tr. at 224, 229, 245, 313, 319, 321, 344, 403, 411, 427, 458.)  Furthermore, there were no findings supporting muscle atrophy. (*Id.* at 317, 344, 427.)

In sum, the ALJ's determination that Dutcher did not meet either listing 1.04 or 1.02 is supported by substantial evidence.[6]  It will, therefore, not be disturbed.

## B.   RFC Determination

Dutcher also argues that she cannot perform the full range of sedentary work.  (Dkt. No. 14 at 7-10; Dkt. No. 14, Attach. 1 at 1-6, 9-19.) Specifically, Dutcher alleges that she is unable to perform the constant repetitive fine and gross hand/finger movements required for sedentary work.  (Dkt. No. 14 at 9.)  Further, Dutcher claims that the ALJ erred in: (1) weighing the opinions of treating physician James Greenspan and consultative examiners Douglas Kirkpatrick, Albert Paolano, and Thomas Osika; (2) failing to discuss Dutcher's "persistent and worsening obesity"; (3) failing to consider the combined effects of Dutcher's severe

---

[6] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

impairments; and (4) rejecting Dutcher's subjective complaints without providing a sufficient rationale.  (Dkt. No. 14 at 7-10; Dkt. No. 14, Attach. 1 at 1-6, 9-17.)  The court does not agree.

A claimant's RFC "is the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).  An ALJ's RFC determination must be supported by substantial evidence in the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ determined that Dutcher retains the RFC to perform sedentary work involving simple, routine tasks with simple instructions and directions.  (Tr. at 15.)  In making this determination, the ALJ relied on the opinions of Drs. Kirkpatrick, Paolano, and Osika.  (*Id.* at 16-19.)  On the other hand, the ALJ afforded the opinions of Dr. Greenspan "little weight."  (*Id.* at 18.)  According to Dutcher, this was in error, as the medical evidence as well as her own testimony support the opinions of Dr. Greenspan that she is unable to perform the demands of sedentary work,

and, further, the opinions of Drs. Paolano and Osika are impermissibly vague.  (Dkt. No. 14 at 9-10; Dkt. No. 14, Attach. 1 at 3-6, 9-19.)  Dutcher claims that she is unable to perform sedentary work because she can only sometimes use her hands normally, persistently drops things, and can lift only five to seven pounds.  (Dkt. No. 14 at 8.)  Further, Dutcher states that pain and numbness caused by carpal tunnel syndrome prevents her from performing constant, repetitive, fine and gross hand/finger movements.  (*Id.* at 9.)

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  20 C.F.R. § 404.1527(c)(2)-(6).

Here, upon examination of Dutcher in May 2008, Dr. Greenspan

noted that Dutcher complained of occasional numbness in the third finger of each hand, but also that "she's been performing a lot of activity including writing for school as well as cutting hair with her arms extended." (Tr. at 319.) Neurologist Edward Scheid evaluated Dutcher in September 2008 and noted that her symptoms were relatively mild. (*Id.* at 314.) Dr. Scheid recommended that Dutcher hold off any further intervention. (*Id.* at 314.) Thereafter, Dutcher complained of numbness in the fourth and fifth fingers of each hand, but Dr. Greenspan indicated that her sensory exam was inconsistent when repeated and, therefore, it was "difficult" for he and Dutcher "to come to any consensus with regard to the sensory changes involved." (*Id.* at 317.) At that time, Dr. Greenspan stated that Dutcher "has complaints of pain that would make her a poor candidate for any full duty status." (*Id.*) However, an EMG conducted in October 2008 showed only "mild median mononeuropathy" at the left and right wrists, and "[n]o evidence of a cervical radiculopathy or more proximal median neuropathy" involving Dutcher's upper extremities, nor any "evidence of an ulnar neuropathy, peripheral polyneuropathy" involving her upper extremities. (*Id.* at 470.)

   In September 2009, Dr. Greenspan noted that Dutcher had not tried

splinting or any local Cortisone shots to treat her carpal tunnel syndrome, and that Dutcher did not feel that she needed surgery. (*Id.* at 407.) Dutcher now argues that the ALJ failed to consider how her lack of insurance impacted her ability to obtain treatment. (Dkt. No. 14, Attach. 1 at 6.) However, when Dr. Greenspan offered Dutcher a trial of splinting to treat her carpal tunnel, she declined the treatment. (Tr. at 408.) In April 2010, Dr. Greenspan opined that Dutcher could perform less than sedentary work, as she could only lift less than ten pounds occasionally, stand and/or walk for less than two hours a day, and sit for less than six hours a day. (*Id.* at 455.) Dr. Greenspan also noted that Dutcher's postural and manipulative functions were abnormal. (*Id.*)

In September 2007, Dr. Kirkpatrick examined Dutcher and reported that her complaints of numbness in her upper extremities were not anatomic and did not have a clear explanation. (*Id.* at 448-49.) At that time, Dr. Kirkpatrick opined that Dutcher was capable of light clerical work that did not involve lifting, squatting, bending, or doing highly repetitive work with her upper extremities away from her body. (*Id.* at 449.) During his December 2007 examination of Dutcher's upper extremities, Dr. Kirkpatrick noted that "the stocking glove distribution is unusual and does

12

not correlate well with her levels of injury." (*Id.* at 442). He concluded that she could perform work with limited lifting, no greater than twenty-five pounds, and should avoid repetitive work away from her body. (*Id.* at 443.) Dr. Kirkpatrick again examined Dutcher in March 2008, and found that she "demonstrates somewhat of an over-reactive sense to very light touch, which alters with repetitive exam," when examining her cervical spine and shoulder blades. (*Id.* at 437.) He noted that there was "evidence of improvement relative to her distal neurologic findings, which . . . remain non-anatomic, and poorly explained secondary to EMG." (*Id.* at 438.) According to Dr. Kirkpatrick, Dutcher was capable of clerical work, but should avoid lifting more than twenty pounds, and squatting. (*Id.*)

Dr. Paolano first examined Dutcher in November 2008. (*Id.* at 343-45.) A sensory examination of Dutcher's hands was normal, she had no signs of atrophy, and she was able to oppose each finger to her thumb with no difficulty. (*Id.* at 344.) Dr. Paolano concluded that Dutcher "seem[ed] somewhat limited in her ability to perform physical type of work due to chronic neck pain which is exacerbated by use of the arms for pushing, pulling, lifting, or holding objects. She is also somewhat limited in her ability to stand and walk." (*Id.*) However, Dr. Paolano also noted that,

13

based on her own reports, Dutcher appeared to be functioning in cosmetology classes, including cutting hair, and was able to stand for "about the time it takes her to perform three hair cuts." (*Id.*) In July 2010, Dr. Paolano concluded that his examination of Dutcher "was essentially within normal limits," other than palpable tenderness and some decreased range of motion of the cervical spine. (*Id.* at 427.)

Based on Dr. Greenspan's limited and inconsistent exam findings, the EMG results, the reports of Drs. Kirkpatrick and Paolano, as well as the conclusion of Dr. Scheid, the ALJ properly declined to give controlling weight to the opinions of Dr. Greenspan that Dutcher was unable to work. (*Id.* at 16-19); *see* 20 C.F.R. § 404.1527(c)(2). Although Dutcher complains that Dr. Paolano's opinion was impermissibly vague, the opinions of consulting physicians "need not be reduced to any particular formula," as long as the opinion is not so vague as to render it useless. *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superceded by statute on other grounds*, 20 C.F.R. § 404.1560(c)(2). Here, Dr. Paolano's opinion clearly supports the ALJ's determination that Dutcher could perform the physical demands of sedentary work. (Tr. at 15, 17-18, 344.) Moreover, his opinion is supported by his examination results, which were mostly

benign.  (*Id.* at 344, 426-27.)

Dutcher also argues that the opinion of Dr. Osika was impermissibly vague to constitute substantial evidence that she was able to perform unskilled work.  (Dkt. No. 14, at 10.)  Dr. Osika examined Dutcher in July 2011 and found her to have good hygiene, logical speech, fair to good insight and judgment, variable affect and mood, a good fund of knowledge and vocabulary, and intact math skills.  (Tr. at 477-78.)  Dr. Osika opined that Dutcher would have mild difficulty with simple tasks and mild-to-moderate difficulty with complex tasks.  (*Id.* at 478.)  Dr. Osika also completed a medical source statement form and indicated that Dutcher has a slight limitation, but "can generally function well" in the areas of understanding, remembering, and carrying out simple instructions.  (*Id.* at 479.)  According to Dr. Osika, Dutcher suffers more than a slight limitation, but "is still able to function satisfactorily" in the areas of interacting appropriately with the public, supervisors, and coworkers, and responding to unusual work situations and changes in a routine work setting.  (*Id.* at 479-80.)  Contrary to Dutcher's contention, the mere use of phrases such as "moderate" or "mild" does not render a doctor's opinion vague or non-substantial for purposes of an ALJ's RFC determination.  *See*

*Mancuso v. Colvin*, No. 12-cv-6425, 2013 WL 3324006, at *4 (W.D.N.Y. July 1, 2013). Here, Dr. Osika's conclusions were clear and detailed, and, moreover, supported by his examination results and the record as a whole. (Tr. at 477-80.) Thus, the ALJ did not err in relying on his opinion to determine that Dutcher could perform unskilled work. (*Id.* at 19.)

Turning to the issue of Dutcher's obesity, while obesity is not in and of itself a disability, it is a medically determinable impairment under the regulations, which the ALJ should consider when assessing an individual's RFC. *See* SSR 02-1p, 67 Fed. Reg. 57,859, 57,860 (Sept. 12, 2002); *Cruz v. Barnhart*, No. 04 CIV 9011, 2006 WL 1228581, at *9-10 (S.D.N.Y. May 8, 2006). "Nonetheless, there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases." *Cruz,* 2006 WL 1228581 at 9. Rather, "[w]hen an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the [claimant], the claimant's obesity is understood to have been factored into their decisions." *Yablonski v. Comm'r of Soc. Sec.*, No. 6:03-CV-414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008) (internal quotations and citations omitted). Here, Drs. Paolano and Kirkpatrick, whose opinions the ALJ relied on in making his RFC determination, noted Dutcher's weight in their

16

reports. (Tr. at 344, 437, 442, 448.) As such, the court determines that the ALJ did not err in failing to specifically address Dutcher's obesity.

Dutcher also asserts that the ALJ erred by failing to adequately discuss the combined effects of her severe impairments. (Dkt. No. 14, Attach. 1 at 11-12.) While the court readily acknowledges that the ALJ must consider "the combined effect of a claimant's impairments . . . in determining disability," *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995), there is no basis to argue that the ALJ failed to do so here. In fact, it is clear that the ALJ considered all of Dutcher's impairments and their combined effect on her, and he simply concluded that her allegations regarding pain and limitation were not entirely credible. (Tr. at 16.) Dutcher argues that the ALJ failed to provide a sufficient rational for his credibility determination. (Dkt. No. 14, Attach. 1 at 14-17.) Indeed, in performing the credibility analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating

factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)]-(vi)).

Here, the ALJ pointed out that Dutcher's complaints were not supported by the objective clinical and radiological evidence, the inconsistent results Dutcher achieved upon sensory testing, the opinions of the consultative examiners, Dutcher's failure to obtain treatment for her carpal tunnel syndrome, her lack of complaints of mental impairments prior to the date last insured, her lack of treatment for her mental impairments, and her daily activities. (Tr. at 16-19). Thus, the ALJ sufficiently set forth reasons, which were well grounded in the record, for finding Dutcher to be only partially credible. (*Id.*)

Ultimately, it is clear from the ALJ's thorough RFC analysis, that he considered the entire case record, including Dutcher's subjective complaints, and his RFC determination is supported by substantial evidence. (Tr. at 15-19.)

**C.** **VE Testimony**

Finally, Dutcher contends that the ALJ's failure to obtain the testimony of a VE is reversible error. (Dkt. No. 14, Attach. 1 at 6-9, 13.) The Commissioner contends that, because the ALJ determined that Dutcher could perform unskilled, sedentary work, the ALJ properly relied on the Medical-Vocational Guidelines. (Dkt. No. 17 at 16-17.) The court agrees with the Commissioner in this regard as well.

In making a step five ruling, an ALJ may rely on the Medical-Vocational Guidelines, commonly referred to as "the grids," found in 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 404.1569; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009). However, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by h[er] exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)). In that case, the ALJ should consult with a VE before making a determination as to disability. *See id.* Notably, "the mere existence of a

19

nonexertional impairment does not automatically require the production of a [VE] nor preclude reliance on the guidelines." *Id.* at 603. Instead, exclusive reliance on the grids will only be deemed inappropriate where the nonexertional impairments *"significantly* limit the range of work permitted by h[er] exertional limitations." *Id.* at 605 (emphasis added) (internal quotation marks and citation omitted).

According to Dutcher, the ALJ erred in concluding that she could perform the full range of sedentary work, given her obesity, "mental health symptoms," and "persistent physical limitations." (Dkt. No. 14, Attach. 1 at 6.) However, as discussed above, the ALJ's RFC determination was supported by substantial evidence. *See supra* Part VI.B. As such, the ALJ's use of the grids was appropriate, and his determination that Dutcher could perform other work is supported by substantial evidence. (Tr. at 19-20.)

**D.    Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

**VII.  Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

20

ORDERED that the decision of the Commissioner is **AFFIRMED** and

Dutcher's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

ORDERED that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 27, 2014
Albany, New York

Gary L. Sharpe
Gary L. Sharpe
Chief Judge
U.S. District Court